FILED
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
By Carrie Ramirez at 4:48 pm, Aug 03, 2009

# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Statesboro Division

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | Adversary Proceeding |
| JACK M. WILLIAMSON | ) | |
| (Chapter 7 Case Number 07-60416) | ) | Number 09-6028 |
| | ) | |
| *Debtor* | ) | |
| | ) | |
| DONALD F. WALTON, | ) | |
| UNITED STATES TRUSTEE, | ) | |
| REGION 21 | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JACK M. WILLIAMSON | ) | |
| | ) | |
| *Defendant* | ) | |

## MEMORANDUM AND ORDER
## ON UNITED STATES TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

Debtor's Chapter 12 was filed on July 26, 2007. On June 19, 2008, Debtor filed a Motion to Voluntarily Dismiss his Chapter 12 under 11 U.S.C. § 1208(b). *See* Motion to Dismiss, Case No. 07-60416, Dckt.No. 157. On June 20, 2008, the United States Trustee filed an Objection to Debtor's Motion to Dismiss and instead asked Debtor's case to be converted to Chapter 7 because Debtor engaged in a pattern of fraudulent conduct. Objection, Case No. 07-60416, Dckt.No. 158. On September 3, 2008, this Court entered a Memorandum

AO 72A
(Rev. 8/82)

and Order converting Debtor's Chapter 12 under § 1208(d) to Chapter 7 finding "instances of concealment, false statements, and omissions that collectively evidence an intent to manipulate the bankruptcy process." Order, Case No. 07-60416, Dckt.No. 182, pg. 11.

On September 11, 2008, the United States Trustee filed Adversary Proceeding Number 08-6028 under § 727 seeking a denial of discharge based on Debtor's fraudulent conduct. Adversary, Case No. 07-60416, Dckt.No. 189. Debtor filed an answer on October 9, 2008. Answer, Dckt.No. 6. On June 16, 2009, the United States Trustee filed a Motion for Summary Judgment. Motion, Dckt.No. 15. On June 2, 2009, Debtor's attorney filed a Motion to Withdraw as Counsel for Debtor on June 2, 2009. Debtor's attorney thereafter filed a Motion for Extension of Time for Debtor to file a response to the Motion for Summary Judgment. Motion, Dckt.No. 18 (June 23, 2009). Prior to the July 10, 2008 hearing for his Motion to Withdraw, Debtor's attorney filed a Response to the Motion for Summary Judgment, a Response to the United States Trustee's Statement of Relevant Facts, and accompanying Brief to fully protect Debtor since the Court had not ruled on the Motion to Extend. Response, Dckt.No. 23; Response, Dckt.No. 24; Brief, Dckt.No. 25. At the hearing on July 10, 2009, this Court granted Debtor's attorney's Motion to Withdraw and Debtor's Motion to Extend Time to Respond until July 30, 2009. Order Granting Motion to Extend Time, Dckt.No. 27. Debtor did not file a response by that date.

The United States Trustee argues that the facts established by the Memorandum and Order entered on September 3, 2008, converting Debtor's Chapter 12 to

Chapter 7 "are synonymous with the facts necessary to support a denial of discharge under 11 U.S.C. § 727(a). In other words, "[t]he Court has previously found that Defendant committed fraud in connection with his bankruptcy case, including the intentional concealment of assets, the intentional concealment of records by which the debtor's financial condition might be ascertained, and the making of false oaths or accounts, which facts support the denial of discharge under 11 U.S.C. § 727(a)(2), (3), and (4), respectively." As a result, Debtor "is precluded from disputing the prior adjudication of these issues under the doctrine of collateral estoppel." Motion, Dckt.No. 15, pg. 2-3. For the following reasons, the United States Trustee's Motion for Summary Judgment is **GRANTED.**

The facts in this Court's underlying order converting Debtor's Chapter 12 to Chapter 7, which is relied on by the United States Trustee in its present motion, are hereby incorporated as follows:

> In his bankruptcy Schedule B, Debtor marked "none" in the category "checking, savings, or other financial accounts." Amended Petition, Dckt.No. 11, pg. 7 (August 11, 2007). Question 18 in his Amended Statement of Financial Affairs required him to reveal the name of any business in which he had been engaged, whether a corporation, partnership, or proprietorship, and Debtor answered the question "none." [Id. at pg. 36]. Debtor's declaration concerning his schedules was signed under penalty of perjury on August 10, 2007. Declaration, Dckt.No. 15 (August 13, 2007). At the July 18, 2008, hearing, he conceded that he had one account at the Montgomery Bank and at least three accounts at the Altamaha Bank that were open on the date of filing in the name of J & K Farms, an entity which he controlled as a

solely owned proprietorship. Neither the name of that business nor the existence of the accounts was revealed in any of his schedules. Debtor admits that at one Rule 2004 examination he denied the existence of these bank accounts. At another Rule 2004 examination he revealed only one of the accounts, despite the fact that it is now known that there were four separate accounts. *See* Exhibit UST-8, page 24.

None of this was corrected when he amended his schedules on October 11, 2007. On that date, Debtor filed an amended Schedule B. Items 13 and 14 on the Schedule B, which require debtors to reveal their interests in incorporated or unincorporated businesses, partnerships or joint ventures, is marked "none." Item 21 of Schedule B requires Debtor reveal the existence of any claims held against another person or entity, and he answered "none" to that question, but now concedes that he had a crop disaster claim for the year 2006 for which he subsequently obtained significant proceeds. Amended Schedule B, Dckt.No. 48. Only in June of 2008, did Debtor file an amendment to his petition revealing the J & K Farms entity, four bank accounts at Altamaha Bank, and his claim to 2007 crop insurance proceeds. Amendment, Dckt.No. 156 (June 19, 2008).

Debtor filed monthly operating reports as required of Chapter 12 family farmers. *See* Exhibit UST-4. In his July 2007 report, he showed total cash in his bank accounts as of July 2007 of $1,831.57, but a comparison of the Altamaha Bank statement shows that as of June 30, 2006, he had a balance of $8,720.21 in one account (Exhibit UST-3), a balance of $854.95 in another (Exhibit UST-11), and a balance of $150.88 in third (Exhibit UST-10).

At the hearing, Debtor acknowledged receipt of Farm Service Agency ("FSA") payments of $3,220.00 on July 24, 2007, $3,184.00 on August 29, 2007, $6,124.00 on September 13, 2007, $2,180.00 on September 17, 2007, and $8,454.00 on October 11, 2007. One of the Altamaha Bank accounts showed FSA as a source of deposits totaling over $20,000.00. *See* Exhibit UST-3. Debtor's

monthly operating reports and Amended Schedule B on October 11, 2007, do not show any receipts of funds from FSA subsequent to the Debtor's filing during the months of July, August, September, and October. See Exhibit UST-4.

Debtor acknowledged after October 11 that he received the following deposits: $13,866.00 on October 15; $6,890.00 on November 5; $2,266.00 on November 8; $7,500.00 on December 7; $27,472.00 on December 27; $13,840.00 on January 9, 2008; $15,274.00 on January 15; $3,706.00 on January 16, among many others. See Exhibit UST-3, pg. 5. None of these deposits were reported. The total amount of FSA deposits in this one bank account was $113,076.00 and non-FSA related deposits was $13,500.00. Debtor also received over $71,000.00 for a 2007 cotton crop, see Exhibit UST-13, but at the Rule 2004 Examination he admitted to only $6,100.00 in proceeds from cotton. Exhibit UST-8, page 43.

On January 18, 2008, Debtor withdrew $72,796.08 and $9,900.00 from one of the Altamaha Bank and Trust accounts. Exhibit UST-3. He testified that he took these withdrawals in the form of a cashier's check and cash. He later deposited the cashier's check and converted the amount into cash. He then placed all the cash in a metal box into a corn bin on his farm. He now alleges that he subsequently discovered that that metal box and the contents are missing and presumed stolen.

Finally, testimony of the representative handling the Montgomery Bank account was uncontradicted that when the bank attempted to repossess collateral pursuant to a consent order granting stay relief (Dckt.No. 126), he found substantial missing collateral, the serial number plates to a vintage Chevrolet Camero automobile removed, and some of the collateral stripped or otherwise vandalized.

Order, Case No. 07-60416, Dckt.No. 182, pgs.3-6 (September 3, 2008).

Based on the above facts, this Court ultimately held in the underlying Order:

> The findings of fact in this Order are replete with instances of concealment, false statements, and omissions that collectively evidence an intent to manipulate the bankruptcy process. Debtor filed his case over one year ago. He did not reveal at filing, or indeed in early amendments, that he owned J & K Farms and at least four bank accounts. He did not reveal a large crop disaster claim. He filed false monthly operating reports concealing large bank balances in the unrevealed accounts. He also concealed numerous large FSA deposits to his accounts. Finally, he withdrew large sums of money from one of the accounts, largely in cash, apparently the proceeds of his unrevealed crop disaster claim, and hid it in a corn bin from which he claims it has allegedly been stolen.
>
> Debtor's conduct is indefensible under any standard of conduct for debtors under bankruptcy protection, amounts to fraud on the Court and his creditors, and presents a text-book case for conversion under § 1208(d).

Id., pgs. 11-12.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is not genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Proc. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed. 265 (1986). Rule 56 of the Federal Rules of Civil Procedure applies to motion for summary judgment in bankruptcy adversary proceedings. *See* Fed.R.Bankr.Proc. 7056. The party moving for summary judgment has the burden of demonstrating that no

dispute exists as to any material fact. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 156, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once this burden is met, the nonmoving party must present specific facts that demonstrate that there is a genuine dispute over material facts. Finally, a court reviewing a motion for summary judgment must examine the evidence in light most favorable to the non-moving party, and all reasonable doubts and inferences should be resolved in the favor of the non-moving party. <u>In re Davis</u>, 374 B.R. 362, 364 (Bankr.S.D.Ga. 2006).

## DISCUSSION

In his Motion for Summary Judgment, the United States Trustee argues the facts established by this Court's Order converting Debtor's Chapter 12 case to Chapter 7 "are synonymous with the facts necessary to support a denial of discharge under 11 U.S.C. § 727(a)." As a result, since the "Court has previously found that Defendant committed fraud in connection with his bankruptcy case, including the intentional concealment of assets, the intentional concealment of records by which the debtor's financial condition might be ascertained, and the making of false oaths or accounts," Debtor "is precluded from disputing the prior adjudication of these issues under the doctrine of collateral estoppel" and thus the above findings of fact and conclusions of law "establish that [Debtor] committed the exact forms of misconduct defined in 11 U.S.C. § 727(a)(2) - (5)." <u>Motion</u>, Dckt.No. 15, pgs. 2-3 (June 16, 2009). Thus the issue here is whether a finding of "fraud in connection with the case" under 11 U.S.C. § 1208(d) is sufficient to deny debtors their discharge under § 727(a)(2), (3), (4) or (5).

Although this action was brought under four subsections of § 727(a), the discharge will be denied if any one of them is applicable. In re Protos, slip op., 2009 WL 977314, at *1 (11th Cir. Apr. 13, 2009). For the following reasons, I find that this Court's previous finding of fraud precludes relitigation of that issue under § 727(a)(4)(A), and the United States Trustee's Motion for Summary Judgment should be granted.

Section 1208(d) provides that this Court may convert a Chapter 12 case to Chapter 7 upon a showing of fraud in connection with the case. In my previous order, I held that Debtor had the "intent to manipulate the bankruptcy process" when (1) he did not reveal to this Court that he owned J & K Farms, four bank accounts, and a large crop disaster claim; (2) he filed false monthly operating reports concealing large bank balances in the unrevealed accounts; and (3) withdrawing large sums of money from one of the accounts and hid the cash from this Court and his creditors. I further held that his behavior amounted to fraud. Order, Order, Case No. 07-60416, Dckt.No. 182, pgs.11-12.

Section 727(a)(4)(A) provides in relevant part as follows:

(a) The court shall grant the debtor a discharge unless-
. . .
    (4) the debtor knowingly and fraudulently, in or in connection with the case-

        (A) made a false oath or account;

"Deliberate omissions by the debtor may also result in the denial of a discharge" In re Chalik,

748 F.2d 616, 618 (11th Cir. 1984). "To justify denial of discharge under § 727(a)(4)(A), the false oath must be fraudulent and material." Swicegood v. Ginn, 924 F.2d 230, 232 (11th Cir. 1991).

In order for the doctrine of collateral estoppel to apply, the following four elements must be satisfied: (1) the issue be identical in both the prior and current action; (2) the issue was actually litigated; (3) the determination of the issue was critical and necessary to the judgment in the prior action; and (4) burden of persuasion in the subsequent action not be significantly heavier. SEC v. Bilzerian (In re Bilzerian), 153 F.3d 1278, 1281 (11th Cir. 1998).

The last three elements of collateral estoppel are easily satisfied. First, the issue of whether debtor's previous representations were fraudulent and intentional was previously litigated in connection with the motion to convert. The issue was determined by this Court, and that determination was affirmed by the District Court. Second, the finding of fraud was essential to this Courts' conversion order since § 1208(d) requires such a finding to grant such a motion. Third, "[a] party who objects to a discharge has the burden to prove the objection by preponderance of the evidence." In re Jennings, 533 F.3d 1333, 1339 (11th Cir. 2008)(citing Grogan v. Garner, 498 U.S. 279, 289-91, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

As to the first element, Debtor argues that the "issue in the motion to convert
9

is not identical to the issues in the Adversary Proceeding" because "the requirements of 11 U.S.C. 727(a)(2)-(5), are narrower definitions, more specific, and more descript [sic], than the fraud requirement of 1208(d). In essence, Section 727(a)(2)-(5) contains specific subcategories of 'fraud'." Brief, Dckt.No. 25, pg. 4. In regards to § 727(a)(4), Debtor argues "Section 727(a)(4) not only requires the debtors action was fraudulent but that the debtor 'knowingly and fraudulently' committed the acts in its subsection." Id., pg. 5.

In my previous order, I specifically found that Debtor had the "intent to manipulate the bankruptcy process" with his many instances of "concealment, false statements, and omission," and ultimately held that his intent and actions amounted to fraud. Order, Case No. 07-60416, Dckt.No. 182, pg. 11-12. Debtor knowingly made a false account of his ownership interest in J & K Farms, four bank accounts, and a large crop disaster claim. He knowingly made a false oath on his schedules and monthly operating reports by concealing numerous large FSA deposits to his accounts and by withdrawing large sums of money from one of these accounts and hiding the proceeds in a corn bin. Furthermore, these omissions were material. Debtor's cash withdrawals alone were for approximately $80,000, a sum which could have gone to creditors but did not since Debtor failed to disclose the deposit and the withdrawal on his monthly operating reports.

## CONCLUSION

For these reasons, my finding of fraud in my previous order converting Debtor's Chapter 12 to Chapter 7 under 11 U.S.C. § 1208(d) must be given collateral

estoppel effect as to the United States Trustee's Adversary Proceeding objecting to discharge under§ 727(a)(4)(A). Having made this determination, there is no genuine issue of material fact as to the §727(a)(4)(A) cause of action; therefore, I grant the Chapter 7 Trustee's Motion for Summary Judgment.

## ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the Motion for Summary Judgment filed by the Chapter 7 Trustee is GRANTED.

IT IS FURTHER ORDERED that the Debtor's discharge is DENIED.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 3rd day of August, 2009.